UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| KENNETH ANTHONY COLLINS, | ) | |
| --- | --- | --- |
| Plaintiff, | ) | |
| v. | ) | 2:21-CV-88 |
| SULLIVAN COUNTY, TENNESSEE et al., | ) | |
| Defendant. | ) | |

**ORDER AND REPORT AND RECOMMENDATION**

Plaintiff filed a Motion [Doc. 2] to proceed *in forma pauperis*. The Motion is before the United States Magistrate Judge pursuant to 28 U.S.C. § 636, and the standing orders of this Court. Plaintiff is representing himself in this action.

The purpose of 28 U.S.C. § 1915 is to ensure that indigent litigants have meaningful access to the courts. *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 342 (1948); *Neitzke v. Williams*, 490 U.S. 319, 324 (1989). As such, the statute allows a litigant to commence a civil or criminal action in federal court without paying the administrative costs of the lawsuit. *Denton v. Hernandez*, 504 U.S. 25, 27 (1992).

The Court's review of an *in forma pauperis* application is normally based solely on the affidavit of indigence. *See Gibson v. R.G. Smith Co.*, 915 F.2d 260, 262-63 (6th Cir. 1990). The threshold requirement which must be met in order to proceed *in forma pauperis* is that the petitioner show, by affidavit, the inability to pay court fees and costs. 28 U.S.C. §1915(a). However, one need not be absolutely destitute to enjoy the benefit of proceeding *in forma pauperis*. *Adkins,* 335 U.S. at 342. An affidavit to proceed *in forma pauperis* is sufficient if its states that the petitioner cannot, because of poverty, afford to pay for the costs of litigation and still pay for

the necessities of life. *Id.* at 339. The decision to grant or deny such an application lies within the sound discretion of the Court. *Phipps v. King*, 866 F.2d 824, 825 (6th Cir. 1988).

Here, Plaintiff's Application to Proceed Without Prepayment of Fees and Petitioner's economic status have been considered and the Court has determined that they support granting leave for Plaintiff to proceed *in forma pauperis*. The Application to Proceed Without Prepayment of Fees [Doc. 2], therefore, is **GRANTED**.

The Clerk is **DIRECTED** to file the complaint without prepayment of costs or fees. *Gibson*, 915 F.2d at 262-63; *see also Harris v. Johnson*, 784 F.2d 222 (6th Cir. 1986). **The Clerk shall not issue process, however, at this time.**

Pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii), the district court may dismiss a complaint as frivolous or if it fails to state a claim upon which relief can be granted. *See also Neitzke*, 490 U.S. 319.[1] The Court now undertakes its role in screening Plaintiff's Complaint [Doc. 1].

I.     **Factual Allegations**

On May 28, 2021, Plaintiff filed a Complaint alleging that Sullivan County, Tennessee and two of its Sheriff's Department deputies acted to deprive Plaintiff of his rights under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution. Plaintiff asserts claims against the deputies in their individual and official capacities. The substance of these allegations stems from two interactions by Plaintiff with Deputies Brandon Peters and A. Palekakis, with one occurring on May 29, 2020 and the other on July 8, 2020. On the earlier date, Plaintiff alleges the named deputies arrived at his home between noon and 1 p.m. and "busted" through a glass back door. Plaintiff submits that despite following deputies' commands to raise his hands, the officers

---

[1] While Plaintiff is not a prisoner, 28 U.S.C. § 1915, despite its references to prisoners, is not limited to prisoner suits. *United States v. Floyd*, 105 F.3d 274, 36 Fed. R. Serv. 3d 1330 (6th Cir. 1997) and *Powell v. Hoover*, 956 F. Supp. 564 (M.D.Pa. 1997).

"brutalized" him by using a taser, kicking him repeatedly in the legs and roughly handcuffing him. Throughout this process, Plaintiff emphasizes that he was attempting to comply with officers' orders throughout the interaction. After he was in handcuffs, Plaintiff advises that the named officers, with the assistance of other unnamed officers, "stomped down on" his upper, middle, and lower back.

Once Plaintiff was handcuffed and placed on the ground, officers allegedly dragged him down twelve steps and into a police car. Officers then denied Plaintiff medical treatment for his injuries. The officers transported Plaintiff to the Sullivan County Jail where he remained for a week. Upon his arrival at the jail, Plaintiff states that he was placed in a wheelchair and once again deprived of medical attention, this time being left alone in the wheelchair for three hours. Plaintiff further avers that he was never shown a warrant and was even told by an unnamed officer that they did not need one when Plaintiff repeatedly asked why he had been arrested. Plaintiff ultimately posted bond and then conferred with his bail bondsman about the reason for his arrest. While Plaintiff says the bondsman was provided with the reason for Plaintiff's arrest, the bondsman was not provided with documents confirming the reason provided. Rather, Plaintiff was simply provided with a date for his initial appearance in state sessions court, which was June 11, 2020.

When the date came to appear before the state sessions court, Plaintiff claims to have appeared and been advised by both the state court judge and prosecuting attorney that his case was not on the court's docket. Then on July 8, 2020, Defendant deputies came to the residence of Plaintiff's mother and arrested Plaintiff for failure to appear, asserting that Plaintiff had not appeared in state court on June 11, 2020 as directed. Plaintiff was then taken to jail where he remained until the following day. Plaintiff avers that he never received an explanation for this subsequent arrest, particularly given that he says he appeared before the sessions court on June 11.

Despite the lack of explanation, Plaintiff was again ordered to appear before the state court at a future date. Plaintiff contacted the Sullivan County Sheriff's Department seeking clarity about the situation and was told that he was "nothing but a known liar." Plaintiff advises he reported the actions of Sullivan County and its officers to the Tennessee Bureau of Investigation and the Federal Bureau of Investigation.

In Plaintiff's complaint, he details multiple injuries he sustained as a result of the officers' actions on May 29, 2020. While Plaintiff acknowledges pre-existing back problems, he says the officers' conduct aggravated these problems and caused further damage to his sciatic nerve, which resulted in temporary paralysis. Plaintiff also alleges that because his handcuffs were too tight, he sustained damage to a nerve ending in his right hand, which was torn. Plaintiff states that he has continued to visit his primary care provider to seek treatment for these injuries, has had x-rays and is scheduled to have MRIs performed.

As a result of his claimed physical injuries and other damages, Plaintiff requests that the Court render a judgment against Sullivan County and its Deputies Brandon Peters and A. Palekakis for the actions taken against him. Plaintiff further requests compensatory and punitive damages in the sum of $1,500,000.00 as well as compensation for the glass door and his prescription eyeglasses he claims officers destroyed in the May 29, 2020 incident. Plaintiff also asks that this Court dismiss the state charges pending against him.[2]

---

[2] A §1983 is not an appropriate vehicle for dismissal of pending state criminal charges. *See Folley v. Banks*, No. 1:20-CV-177, 2020 WL 1876249, at *2 (S.D. Ohio Apr. 15, 2020), *report and recommendation adopted,* No. 1:20-CV-177, 2020 WL 2193319 (S.D. Ohio May 6, 2020) (explaining that "it is well-settled that a federal court should not interfere in pending state court criminal proceedings absent the threat of 'irreparable injury' that is 'both great and immediate.'").

## II. Legal Analysis

42 U.S.C. § 1983 creates a federal cause of action against any person acting under color of law who causes a plaintiff to be deprived of "any rights, privileges, or immunities secured by the Constitution and laws." To be successful in a § 1983 action, a plaintiff must demonstrate both that he or she was deprived of rights under the Constitution or other laws and that a defendant caused the deprivation while acting under color of law. *Block v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998). "If a plaintiff fails to make a showing on any essential element of a § 1983 claim, it must fail." *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Id.* (quoting *United States v. Classic,* 313 U.S. 299, 326 (1941)). Law enforcement actions will also be considered official where they are the result of "acts representing official policy or custom" of the agency. *Ferrick v. Winchester Police Dep't*, No. 4:12-CV-29, 2015 WL 4563203, at *4 (E.D. Tenn. July 29, 2015). Here, Plaintiff raises claims against two officers affiliated with the Sullivan County Sheriff's Department and their employer Sullivan County, Tennessee.[3]

### A. Claims against Officers in their Individual Capacities

Plaintiff asserts claims against Deputies Peters and Palekakis. A Court in this District, when addressing these same types of claims, explained that "[m]unicipal (or local government) officers are insulated by the 'qualified' or 'good faith' immunity doctrine from exposure to 'individual

---

[3] While suits against local law enforcement divisions, such as sheriff and police departments, are not actionable under § 1983, the Court in liberally construing a pro se pleading may treat a § 1983 claim against a law enforcement division as being made against the county or city government in which the division is housed. *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994); *see e.g. Weber v. Louisville Metro Police Dep't*, No. 3:16-CV-85-DJH, 2016 WL 1242584, at *3 (W.D. Ky. Mar. 29, 2016). Here, the handwritten caption in this matter lists "Sheriff's Department" in a line below "Sullivan County, Tennessee", the Plaintiff also separately notes in Section B to the form complaint that Sullivan County, Tennessee is a defendant and the Sheriff's Office is the title of the unit of Sullivan County that caused him harm. The Court will construe this complaint as being filed against Sullivan County, Tennessee.

capacity' lawsuits anchored in a discretionary official decision if their conduct does not violate clearly established [federal] statutory or constitutional rights of which a reasonable person would have known, even if their actions actually violated the plaintiff's federal rights." *Dillingham v. Millsaps*, 809 F. Supp. 2d 820, 835 n. 12 (E.D. Tenn. 2011). When presented with a claim against an individual officer, the Court may *sua sponte* review whether the officer is entitled to qualified immunity. *See Matthews v. City of Collierville*, No. 13-2703-JDT-TMP, 2014 WL 69127, at *7 (W.D. Tenn. Jan. 8, 2014). When screening a pro se complaint in this manner, the Sixth Circuit has cautioned that "a court 'may [*sua sponte*] dismiss a [prisoner's] claim on qualified immunity grounds ..., but only if it is clear from the complaint that the plaintiff can present no evidence that could overcome a defense of qualified immunity.'" *Small v. Brock*, 963 F.3d 539, 543 (6th Cir. 2020) (quoting *Chavez v. Robinson*, 817 F.3d 1162, 1169 (9th Cir. 2016)). In undertaking such a review, the Court asks "whether the facts alleged show the officer's conduct violated a constitutional right and whether that right was clearly established." *Sullivan v. Carrington*, No. 2:19-CV-00049-DCLC, 2020 WL 3124481, at *5 (E.D. Tenn. June 12, 2020) (citing *Robertson v. Lucas*, 753 F.3d 606, 615 (6th Cir. 2014)). Here, Plaintiff alleges violations of his Fourth, Eighth, and Fourteenth Amendment rights. Plaintiff does not indicate with any precision how Deputies Peters and Palekakis violated each amendment but sets forth a robust set of factual allegations. Given that he is proceeding pro se, Plaintiff is entitled to a liberal pleading standard. *Arucan v. Cambridge E. Healthcare/Sava SeniorCare LLC*, 347 F. Supp. 3d 318, 335 (E.D. Mich. 2018), *aff'd sub nom. Arucan v. Cambridge E. Healthcare Ctr./Sava Seniorcare, LLC*, 763 Fed. Appx. 415 (6th Cir. 2019).

### i. False Arrest

Plaintiff asserts that he was falsely arrested on two occasions. The Fourth Amendment requires warrantless arrests be undertaken only "where there is probable cause to believe that a criminal offense has been or is being committed." *Ouza v. City of Dearborn Heights, Michigan*, 969 F.3d 265, 279 (6th Cir. 2020) (citing *Devenpeck v. Alford*, 543 U.S. 146, 152, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004)). To make out a false arrest claim, a plaintiff must demonstrate that he or she was arrested in the absence of probable cause. *Gordon v. Clinton Police Dep't*, No. 3:19-CV-496, 2021 WL 1431544, at *3 (E.D. Tenn. Apr. 15, 2021). Here, Plaintiff alleges he was arrested without a valid warrant or probable cause. At the same time, Plaintiff also states that there are charges pending against him, which would be a matter of public record in the Sullivan County General Sessions Court. Plaintiff does not provide any information about the alleged charges nor does he state that he has ever attempted to obtain a copy of the charges through that source. Also, he mentions that his bail bondsman was told why Plaintiff was arrested but that the bail bondsman was not provided with a copy of any paperwork; however, Plaintiff does not disclose the reason the bail bondsman was given for Plaintiff's arrest nor does Plaintiff state whether he was ever arraigned by the Court on the charges at issue. He simply states he was advised that his case was not on the docket when he appeared on the date he was provided. At the same time, Plaintiff contends that he was never presented with an arrest warrant or advised of the offenses with which he was being charged. Plaintiff then claims that he was arrested for a second time because he failed to appear and was given a new Court date, which would indicate that there are in fact charges pending against him.

The Court finds it appropriate to permit Plaintiff an opportunity to proceed as to these allegations; however, even assuming Plaintiff's allegations are true, the Court notes that he has not

provided all facts and surrounding circumstances necessary to determine whether law enforcement officers acted within their authority as to the arrest itself. Especially in the absence of information regarding the charges pending against Plaintiff, the Court expects that it will likely be tasked with reevaluating the merits of Plaintiff's false arrest claim. At this juncture, the Court merely finds that the allegations are sufficient to allow Plaintiff to proceed beyond the screening phase against the named deputies as to this basis for liability.

      ii. *Excessive Use of Force*

Plaintiff also asserts that the named officers violated his rights in using excessive force during his May 29, 2020 arrest. The Fourth Amendment of the United States Constitution protects a person from being subjected to excessive physical force during the course of an arrest, a booking, or other police seizure. *Smith v. Wilson Cty. Sheriff's Office*, No. 3:18-CV-00462, 2018 WL 3473966, at *3 (M.D. Tenn. July 18, 2018) (citing *Graham v. Connor*, 490 U.S. 386, 388 (1989)). Applying this well-established right, a Court in this District permitted a litigant proceeding *in forma pauperis* to pursue an excessive use of force claim under § 1983 where the litigant alleged that he had been choked by the officer-defendant during a police interrogation. *See Marsh v. Randolph,* No. 1:09-CV-13, 2012 WL 397778, at *9 (E.D. Tenn. Feb. 7, 2012).

Here, Plaintiff alleges among other things that the named deputies "brutalized" him during an arrest on May 29, 2020 despite his compliance with the officers' commands. He further contends that the officers' actions caused him to sustain serious injuries. Taking these allegations as true, the Court concludes that Plaintiff has set forth a plausible Fourth Amendment claim against Deputies Peters and Palekakis.

### iii. Withholding Medical Care

Plaintiff further asserts that the Defendant officers withheld medical care after brutalizing him. As a Court in this District has explained, "the Eighth Amendment's ban against cruel and unusual punishment requires prison authorities to provide medical care for prisoners' serious medical needs." *McNutt v. Centurion Med.*, No. 2:17-CV-212, 2018 WL 735227, at *4 (E.D. Tenn. Feb. 5, 2018) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Pretrial detainees are similarly protected from cruel and unusual punishment pursuant to the Due Process Clause of the Fourteenth Amendment. *Baynes v. Cleland*, 799 F.3d 600, 618 (6th Cir. 2015). Proof of a violation of either Amendment involves satisfying a two-part test with an objective and subjective component. *Id.* (citing *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir.2004)). To fulfill the objective component, a plaintiff must demonstrate that they suffered from a "sufficiently serious medical need" while in custody. *Id.* "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (citing *Harrison v. Ash,* 539 F.3d 510, 518 (6th Cir.2008)). A plaintiff must also satisfy a subjective component by demonstrating a named defendant acted with deliberate indifference, meaning "a sufficiently culpable state of mind in denying medical care" which is "more than mere negligence." *Blackmore*, 390 F.3d at 895.

Here, Plaintiff asserts that he requested and was denied medical care upon his arrest and after being "brutalized" by the arresting officers. Plaintiff states that instead of receiving the requested medical treatment, he was transported to the Sullivan County Jail where was placed in a wheelchair and left there for approximately three hours, again with no medical care. Plaintiff claims that he experienced some temporary paralysis as a result of his injuries and has been required to seek medical treatment for nerve damage to his hand as well as nerve pain and

worsened back problems. Spinal or nerve damage is the type of serious condition that might arise following the officers' alleged actions. Taking the facts Plaintiff alleges as true, as we must at this juncture, officers would have been aware of the serious injuries sustained by Plaintiff because they allegedly caused them, and their failure to obtain medical care for Plaintiff would have constituted deliberate indifference. This is the type of behavior that the Eighth and Fourteenth Amendment guard against; therefore, at this juncture in the proceedings the Court does not find Plaintiff's allegations to be frivolous on their face and concludes that Plaintiff may also proceed against the officers as to this claim.

### B. Claims against Officers in their Official Capacities and against Sullivan County

While Plaintiff does not specify whether he is suing the officers at issue in their official or their individual capacities or both, because of the liberal standard applicable to pro se pleadings the Court will assume that Plaintiff intended to sue them in both capacities. The fact that Plaintiff also brought a claim against the officers' employer supports this assumption. Additionally, the Court notes that the claims against the officers in their official capacities and against Sullivan County are one and the same as a lawsuit against an officer in his or her official capacity is simply treated as a suit against the local government for which he or she is employed. *Pineda v. Hamilton Cty., Ohio*, 977 F.3d 483, 494, 2020 WL 5868402 (6th Cir. 2020). In other words, law enforcement officers, while acting in their official capacity, may subject their employing government to a §1983 suit for use of excessive force. *Smith v. Wilson Cty. Sheriff's Office*, No. 3:18-CV-00462, 2018 WL 3473966, at *3 (M.D. Tenn. July 18, 2018); *Deir v. Lake Cty.*, No. 1:12-CV-110, 2012 WL 1142467, at *2 (N.D. Ohio Apr. 4, 2012). In determining whether such a suit has merit, a Court in this District explained, "[a] government entity is liable under 42 U.S.C. § 1983 only when the execution of a government policy or custom, whether made by its lawmakers or those officials

whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Rhodes v. City of Chattanooga, Tennessee*, No. 1:04-CV-045, 2005 WL 2647921, at *5 (E.D. Tenn. Oct. 14, 2005). In that case, the plaintiff alleged a law enforcement officer wrongfully "committed a violent assault and battery on [him] causing him to suffer physical injuries" following a traffic stop. *Rhodes,* 2005 WL 2647921, at *2. There, the District Court declined to find the City of Chattanooga liable to the plaintiff after noting that its review of the record showed an absence of evidence that the city's "deliberate conduct, was the 'moving force' behind the alleged deprivation of [plaintiff's] rights. . . ." *Rhodes,* 2005 WL 2647921, at *5; *see also Graham v. Sequatchie Cty. Gov't*, No. 1:10-CV-20, 2011 WL 1305961 (E.D. Tenn. Apr. 4, 2011). Here, the record is devoid of factual allegations indicating that the policies and customs of Sullivan County and its law enforcement division caused the wrongs alleged by Plaintiff. While the Court is sympathetic to the difficulties of pro se filers, the Court is not to conjure up new factual allegations on their behalf. *See Avalon Tribal Gov't v. United States*, No. 4:20-CV-340, 2020 WL 4432918, at *1 (N.D. Ohio July 31, 2020) (citing *Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008)). Here, the Court finds that Plaintiff's Complaint lacks any factual basis for finding that Sullivan County's policies or customs were a "moving force" behind the actions allegedly committed by the named officers. As such, the Court concludes that permitting Plaintiff to move forward with claims against the officers in their official capacities or against Sullivan County, Tennessee would be fruitless.

### III. Conclusion.

For reasons stated above, this Court makes the following recommendations to the District Court:

1. It is **RECOMMENDED** that Plaintiff's claims against Officers Peters and Palekakis in their individual capacities be permitted to proceed beyond the PLRA screening stage and that process be issued as to those claims;

2. It is further **RECOMMENDED** that Plaintiff's claims against Sullivan County and Officers Peters and Palekakis in their official capacities be **DISMISSED** as Plaintiff has failed to set forth facts sufficient to state a claim on which relief may be granted;

3. It further **RECOMMENDED** that Plaintiff be required to file an amended complaint before process is issued wherein Plaintiff asserts only those claims permitted to proceed beyond the PLRA screening stage and requesting only such relief as this Court has the authority to grant.

This matter is now presented to the District Judge pursuant to this Report and Recommendation under the authority of *Gibson v. R.G. Smith Co.*, 195 F.2d at 263, wherein the Court held that such matters proceed automatically to a district judge for examination of the complaint after a magistrate judge has granted the petition to proceed *in forma pauperis*.[4]

Respectfully submitted,

s/ Cynthia Richardson Wyrick
UNITED STATES MAGISTRATE JUDGE

---

[4] Objections to this Report and Recommendation must be filed within 14 days after service of this recommended disposition on the objecting party. 28 U.S.C. 636(b)(1); Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Fed. R. Civ. P. 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).